**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MINE SAFETY APPLIANCES COMPANY**, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:09cv348 |
| | ) | Electronic Filing |
| **THE NORTH RIVER INSURANCE COMPANY** and **RIVERSTONE CLAIMS MANAGEMENT LLC**, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

AND NOW, this 18th day of September, 2012, after de novo review of the record and upon due consideration of [348] the Special Discovery Master's Report and Recommendation addressing Mine Safety Appliances' ("MSA") Motion to Compel Interrogatory Answers and Production of Documents Directed to North River, [372] the Special Discovery Master's Supplemental Report and Recommendation on Interrogatory No. 18 and 19 of MSA's Third Set of Interrogatories and [377, 391, 401 and 405] the parties' submissions in conjunction therewith, IT IS ORDERED that [263] the motion be, and the same hereby is, granted in part and denied in part. The motion is granted to the extent it seeks to compel North River to provide full and complete answers to subparts (g) of Interrogatory Nos. 8 and 9 of MSA's Third Set of Interrogatories, regarding communications with MSA's general liability insurers (other than North River).   The motion is denied in all other aspects.   The reports and recommendations of the Special Discovery Master as augmented herein are adopted in support of this ruling.

Plaintiff's objections to the Supplemental Report and Recommendation are unavailing.

To be sure, it repeatedly has been recognized that an insurer's conduct during the course of litigation can supply evidence to support a finding of bad faith in violation of Pennsylvania's Bad Faith Insurance Practices Act. See, e.g., O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. 1999) ("we find that the broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation. In so finding, we refuse to hold that an insurer's duty to act in good faith ends upon the initiation of suit by the insured."); W. V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 314 n.6 (3d Cir. 2003) ("The Pennsylvania Superior Court has held that bad faith is actionable regardless of whether it occurs before, during or after litigation."). But a mere showing that the carrier has taken some untoward step in violation of the governing rules of litigation is beyond the reach of the statute. See O'Donnell, 734 A.2d at 909 ("it is clear that the plaintiff is not entitled to redress under section 8371 since the statute was designed to provide 'a remedy for bad-faith conduct by an insurer in its capacity as an insurer and not as a legal adversary in a lawsuit filed against it by an insured.'") (quoting Slater v. Liberty Mut. Ins. Co., 1999 U.S. Dist. LEXIS 3753, 1999 WL 178367 (E.D. Pa. March 30, 1999)).

Instead, in order to supply evidence of a breach of the fiduciary duty between an insurer and its insured, litigation conduct must be something more than a violation of the operative rules governing litigation. W. V. Realty, 334 F.3d at 313. In other words, the conduct must at least be capable of giving rise to an inference that the insurer's action was part of a calculated undertaking "to evade the insurer's obligations under the insurance contract." W. V. Realty, 334 F.3d at 313.

By definition a showing of bad faith is analytically distinct from orchestrating a rule violation in an effort to gain an upper hand in ongoing coverage litigation. Cf. W. V. Realty, 334

2

F.3d at 312 ("To make out a claim of bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim.") (quoting Keefe v. Prudential Prop. and Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir.2000)); Lochart v. State Farm Mut. Auto. Ins. Co., 410 F. Appx. 484, 485-86 (3d Cir. 2011) ("Pennsylvania case law makes it clear that a party seeking to prove a bad faith claim must establish by clear and convincing evidence that the insurance company acted in bad faith without a reasonable basis for denying the claim, and that it knowingly or recklessly disregarded its lack of a reasonable basis to do so. Accordingly, to establish that the insurer acted in bad faith the insured must demonstrate that the insurance company acted frivolously with a dishonest purpose and breached its known duty.") (collecting cases in support).   A showing that an insurer has attempted to obstruct the litigation, engaged in frivolous behavior or initiated a declaratory coverage action in a bad faith effort to evade a duty owed under the policy are illustrative.   Watson v. Nationwide Mut. Ins. Co. of North America, 2012 WL 2159297, *9 (E.D. Pa. June 14, 2012) (collecting cases).

   The conduct which MSA seeks to further explore is akin to the pure rule violation that the W. V. Realty court found to be beyond the purview of relevant evidence that can establish bad faith.   See W. V. Realty, 334 F.3d at 314 ("We conclude that the discovery violation in this case fell into the "pure discovery violation" category as opposed to the "discovery violation as insurance bad faith" category.   There is simply no evidence that Northern failed to disclose the bad faith cases in order to avoid paying plaintiffs' business interruption claim.").   As such, it is not relevant to support a finding of bad faith and the Special Discovery Master properly barred MSA's

foray in the Supplemental Report and Recommendation.[1]

                     s/ David Stewart Cercone
                     David Stewart Cercone
                     United States District Judge

cc:     Brian T. Himmel, Esquire
        George L. Stewart, II, Esquire
        Michael H. Sampson, Esquire
        Alan S. Miller, Esquire
        Bridget M. Gillespie, Esquire
        Dennis O. Brown, Esquire
        Henry M. Sneath, Esquire
        (*Via CM/ECF Electronic Mail*)

---

[1] Beyond boilerplate assertions, MSA does not explain how the alleged violations actually create an inference that North River's conduct was part of an effort to breach a fiduciary duty or evade a known obligation to pay insurance benefits. Given these circumstances, adopting MSA's position would convert every rule violation committed in a coverage action into evidence of a concomitant bad faith claim. Such a proposition lacks precedential support and analytical appeal.